## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **MAVERICK WHISKEY, LLC** | § | |
| **PLAINTIFF,** | § | |
| | § | **CIVIL ACTION NO. 5:19-CV-136** |
| **v.** | § | |
| | § | |
| **BREWERY ON HALF** | § | |
| **MOON BAY, INC.** | § | **JURY TRIAL REQUESTED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, MAVERICK WHISKEY, LLC, files this action against Defendant, the Brewery On Half Moon Bay, Inc., seeking a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and cancellation of Defendant's trademark registrations as follows.

## PARTIES

1. Plaintiff MAVERICK WHISKEY, LLC ("Plaintiff" and "Kenneth Maverick" and "Plaintiff Kenneth Maverick") is a Texas limited liability company with its principal place of business at 4775 Hamilton Wolfe Road, San Antonio, Texas 78229.

2. Plaintiff Maverick Whiskey is owned by Kenneth Maverick whose family name is the origin of the term maverick.

3. Defendant The Brewery On Half Moon Bay, Inc. ("Defendant"), is a California Corporation with a principal place of business at 390 Capistrano Road, Half Moon Bay, California 94019. Defendant will be served with this complaint by serving it on the Secretary of State of Texas who will mail it to Plaintiff's registered agent for service, Christine Mendonca, 390 Capistrano Road, Half Moon Bay, California 94019.

## JURISDICTION AND VENUE

1

4.     The Court has jurisdiction over the lawsuit pursuant to the United States Declaratory Judgment Act, 28 U.S. Code § 2201.

5.     This Court has subject matter jurisdiction over this federal claim pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 in that this matter raises federal questions arising out of, and under, the Lanham Act, 15 U.S.C. § 1051 *et seq*.

6.     This United States District Court may exercise original jurisdiction over the subject matter of this Civil Action based upon an actual controversy between the parties under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202, for the relief requested herein of declaratory judgment with respect to the validity and enforceability of rights described herein.

7.     This United States District Court may exercise supplemental jurisdiction over the subject matter of this Civil Action pursuant to 28 U.S.C. § 1367(a) for any other state-law claim asserted herein arising from the same transactions or occurrences and implicating the same questions of fact and related questions of law.

8.     This United States District Court may exercise jurisdiction over Defendant on the ground that, *inter alia*, Defendant and/or Defendant's agents regularly conduct commerce in the State of Texas, deriving revenue and value therefrom, so as to purposefully avail itself of the privilege of conducting business within the State of Texas, and particularly in this District.

9.     This Court has personal jurisdiction over Defendant because Defendant sells its Mavericks beer in the state of Texas, including in the Western District of Texas.

10.     This Court has personal jurisdiction over Defendant because said Defendant purposefully availed himself of the privilege of conducting activities in the State of Texas and established minimum contacts sufficient to confer jurisdiction over said Defendant.

11.     Furthermore, the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

12.     This United States District Court may exercise jurisdiction over Defendant on the ground that, *inter alia*, the conduct of Defendant and/or Defendant's agents as alleged herein caused and continues to cause injury to Plaintiff in the State of Texas, and, particularly in this District.

13.     Defendant expected its actions to be of consequence in the State of Texas and in this District.

14.     Defendant engaged in activities constituting doing business in the state of Texas.

15.     Plaintiff is a Texas resident and citizen.

16.     Defendant is a California resident and citizen.

17.     This Court has personal jurisdiction over the Defendant pursuant to Texas Civil Practice and Remedies Code § 17.042, the Texas Long Arm Statute, because it has continuously and systematically transacted business in the State of Texas and San Antonio, Bexar County, Texas, maintained a general presence in the State of Texas and the San Antonio, Bexar County, Texas through conducting business and marketing its Mavericks branded products in Texas at issue in this action.

18.     Also, Defendant claims Plaintiff has committed and caused tortious conduct and harm to occur in the State of Texas and the San Antonio, Bexar County, Texas, to Defendant, and established minimum contacts with the forum, for which the exercise of personal jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice.

19.    Defendant sells and markets is products nationwide, including in Texas even though Defendant is not in compliance with Texas laws.

20.    Defendant sells and markets it products to Texas residents.

21.    Defendant conducted product development and testing of its MAVERICKS beer in cans, in addition to bottles, in 2013 for is nationwide distribution program.

22.    In 2014 Defendant publicly announced its program to "distribute its award-winning brews across the United States."

23.    In 2014 Defendant, publicly announced that it would begin its nationwide program with "with distribution by Southern Wine & Spirits, the largest distributor in the United States."

24.    Southern Wine and Spirits merged with Glazers, another national distributor and is now known as Southern Glazers and has a web site at www.southenglazers.com, and has offices in Texas at:

Main Office
2001 Diplomat Dr
Farmers Branch, TX 75234-8919
Phone:(972) 277-2000
Fax:(800) 275-2854

Offices

4100 W Amarillo Blvd
Amarillo, TX 79106-7015
Phone:(325) 795-2000
Fax:(325) 795-5340

101 45th St
Corpus Christi, TX 78405-3309
Phone:(361) 883-9205
Fax:(361) 883-1259

502 E 64Th St
Lubbock, TX 79404-5404
Phone:(806) 740-0820
Fax:(806) 744-1787

8119 Exchange Drive
Austin, TX 78754-5238
Phone:(512) 919-1500
Fax:(512) 933-9502

2030 A Loop 306
San Angelo, TX 76904-6821
Phone:(325) 949-2877
Fax:(325) 944-0880

1002 S Callaghan Rd @ Hwy 151
San Antonio, TX 78227
Phone:(210) 224-4291
Fax:(210) 224-4936

9350 East Point Drive
P.O. Box 2686
Houston, TX 77252-2686
Phone:(713) 791-9830
Fax:(713) 796-9627

9353 Center Point Drive
Houston, TX 77054
Phone:(713) 791-9830
Fax:(713) 795-0411

14911 Quorum Drive
Suite 150, P.O. Box 809013
Dallas, TX 75380-9013
Phone:(972) 392-8200
Fax:(972) 702-8508

25.     Defendant actively solicits business from Texas residents at its Brewery, Restaurant and Event Center in connection with its Mavericks marks.

26.     Defendant maintains interactive websites soliciting business from Texas residents at its Brewery, Restaurant and Event Center in connection with its Mavericks marks.

27.     Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL BACKGROUND

28.     MAVERICK WHISKEY and SAMUEL MAVERICK whiskey are named after Samuel Augustus Maverick, the great, great, great-grandfather of Plaintiff's owner, Kenneth Maverick.

29.     The word maverick, which now has a dictionary meaning of an unorthodox or independent-minded person or an unbranded calf or yearling, came from Samuel A. Maverick, (1803–70), a Texas rancher who did not brand his cattle.

30.     A maverick describes a person who thinks independently. A maverick refuses to follow the customs or rules of a group to which he or she belongs. In the U.S., a maverick is often admired for his or her free spirit. Although others who belong to the maverick's group may not like the maverick's independent way.

31.     Early in the 1800s, a man named Samuel Augustus Maverick moved to Texas from the eastern United States. Texas was a place of wide-open land, rich soil, cattle ranches and cowboys.

32.     Samuel Maverick had just completed law school. He settled down in Texas and became an important landowner and a politician. In fact, he became mayor for the city of San Antonio. As the years passed, Mr. Maverick added to his property in Texas. Before long, he owned huge pieces of land good for raising cattle. But he had no cattle. He wasn't a rancher. One day a man came to Sam Maverick to pay an old debt. But the man did not have the money he owed. So, he offered Mr. Maverick 400 cattle. Mr. Maverick accepted them, but he didn't really want them. He simply turned the cattle loose on his land to eat and care for themselves. It was not long before the cows reproduced. The calves grew and had more calves. Soon hundreds of cows and calves moved freely across Sam Maverick's land. They also moved across the land of nearby ranch

owners. It was a tradition among ranchers in the West to put a mark of ownership on newborn calves. They burned the name of their ranch into the animal's skin with a hot iron. The iron made a clear mark called a "brand." Brands allowed ranchers to easily see who owned which cattle.

33.     Sam Maverick refused to brand his calves. Why should he, he asked. If all the other cattle owners branded theirs, then those without a brand belonged to him. And this is how the word "maverick" got into the American language. It meant a calf without a brand.

34.     As time passed, the word "maverick" took on a wider meaning. It came to mean a person who was too independent to follow even his or her group. Sam Maverick was a maverick in two ways. It was his name, of course. And it described his decision not to follow the tradition of ranchers to brand their cattle.

35.     Samuel Maverick also made his own whiskey.

36.     As the legend goes, Samuel Maverick rode off to represent San Antonio de Bexar at Washington-on-the-Brazos. But, before he did, he left a jug of his homemade whiskey with his comrades, all of whom would later die at the Alamo.

37.     The term maverick has become a common term and made even more famous by the likes of John McCain, the Dallas Mavericks and the Maverick TV show and Maverick movies.

38.     There is Maverick and Gose for beer, Reg. No. 5187844 owned by Second Self, LLC.

39.     There is Maverick Barossa for wine, Reg. No. 4946389 owned by Ronald Etienne Brown.

40.     There was Maverick Above The Law for red wine, Reg. No. 3604444 owed by One True Vine LLC from March 6, 2006 to April 7, 2015.

41.     There is Maverick Wine Company for wholesale distributorships featuring fine wine and spirits, Application serial No. 88250088, filed January 4, 2019, April 4, 2002 alleged date of first use, owned by Maverick Wine Co., a large nationwide distributor.

42.     It has also become a commonly used formative in trademarks and service mark.

43.     Three are 266 pending Maverick applications in the USPTO.

44.     In 2016, Kenneth Maverick, the great, great, great-grandson of Samuel Maverick, decided to resurrect the MAVERICK brand.

45.     On October 19, 2016, Plaintiff Kenneth Maverick filed a trademark application No. 87208309 in the United States Patent and Trademark Office ("USPTO") for "MAVERICK BOURBON" for "Bourbon, Bourbon whiskey."

46.     On October 19, 2016, Plaintiff Kenneth Maverick filed a trademark application No. 87208305 in the United States Patent and Trademark Office ("USPTO") for "MAVERICK WHISKEY" for "whiskey and whiskey spirits."

47.     On October 19, 2016, Plaintiff Kenneth Maverick filed a trademark application No. 87208322 in the United States Patent and Trademark Office ("USPTO") for "MAVERICK FAMILY WHISKEY" for "whiskey and whiskey spirits."

48.     On October 19, 2016, Plaintiff Kenneth Maverick filed a trademark application No. 87208570 in the United States Patent and Trademark Office ("USPTO") for "MAVERICK TEXAS WHISKEY" for "whiskey and whiskey spirits" based on a bona fide intent to use.

49.     On January 28, 2019, Plaintiff Kenneth Maverick filed a trademark application No. 88279077 in the United States Patent and Trademark Office ("USPTO") for "SAMUEL MAVERICK" for "whiskey and whiskey spirits."

50.     Plaintiff Kenneth Maverick's marks identified in the above pending trademark applications are referred to collectively herein as "Plaintiff's MAVERICK marks."

51.     Plaintiff's MAVERICK marks have been refused registration in the USPTO.

52.     Defendant is the owner of Registration No. 2532120, for "Mavericks" for "beer and ale," filed June 18, 2001, serial No. 76272790, registered January 22, 2002.

53.     Defendant is also the owner of Registration No. 4422214, for "Mavericks" for "wines" serial No. 78962262, filed August 28, 2006, Statement of use filed August 9, 2013, registered October 22, 2013.

54.     As discussed in greater detail below, both of Defendant's trademark registrations are invalid.

55.     Nonetheless, on February 5, 2017, the trademark examiner assigned to Plaintiff Kenneth Maverick's trademark application issued an office action refusing to register Plaintiff Kenneth Maverick's application for "MAVERICK WHISKEY" based on the prior registration of Defendant's trademark registrations.

56.     Defendant asserts that Plaintiff Kenneth Maverick has committed trademark infringement and unfair competition.

57.     Defendant threatened to sue Plaintiff and enjoin Plaintiff from using Plaintiff's MAVERICK marks in connection with alcoholic beverages.

58.     Defendant claims that it has the exclusive right to use MAVERICKS and MAVERICK in connection with alcoholic beverages.

59.     Defendant claims Plaintiff has no right to use its MAVERICK marks in connection with alcoholic beverages.

60.     In a further attempt to prevent Plaintiff's trademark application from registering, Defendant filed trademark application No. 87539706 for "alcoholic beverages except beers; spirits," despite the fact that it has no intention of building a distillery or selling spirits.

61.     Plaintiff is the first user of MAVERICK for whiskey.

62.     There are numerous third-party registrations and pending applications and users in International Class 33 and for alcoholic beverages and in International Class 35 for distribution of alcoholic beverages including the term MAVERICK or the term MAVERICKS that are owned by third parties.

63.     Since at least as early as May of 2018, Plaintiff has used, and continues to use, the MAVERICK mark on its website, maverickwhiskey.com and to advertise the imminent sale of its whiskey.

64.     Despite more than a year of consistent and pervasive advertising and publicity by Plaintiff, there has been no actual confusion between the parties' marks.

65.     The marks at issue here are completely different.

66.      Plaintiff's MAVERICK WHISKEY trademark includes the term "whiskey" which eliminates any possible confusion with Defendant's MAVERICKS trademarks.

67.     Plaintiff's SAMUEL MAVERICK trademark includes the term "Samuel" which eliminates any possible confusion with Defendant's MAVERICKS trademarks.

68.     In addition, the parties' goods and services are very different.

69.     Plaintiff's mark is for the MAVERICK WHISKEY trademark while Defendant's MAVERICKS registrations are for beer and wine, respectively.

70.     Because of differences in alcohol content, packaging, and legal restrictions on the advertising and sale of liquor, consumers can easily distinguish whiskey and other spirits from beer and wine.

71.     Plaintiff does not, and has never, intended to cause consumer confusion by and through its use of the MAVERICK trademarks or to harm Defendant in any way. As Plaintiff's product labels and website make very clear, Plaintiff intends only to honor the legacy of Samuel Maverick.

72.     In addition, Defendant cannot maintain an action for trademark infringement against Plaintiff for its use of Plaintiff's MAVERICK trademarks based on either of its trademark registrations because both of its MAVERICKS trademark registrations are for a different mark and are invalid.

73.     Both of Defendant's MAVERICKS trademark registrations are named after Mavericks Beach, a world-famous surf destination for big wave surfers located next to Defendant's restaurant in Half Moon Bay, California.

74.     Indeed, specimens filed by Plaintiff in support of its MAVERICKS Registration No. 2532120 on August 1, 2011 and August 22, 2007, as well as the specimen filed by Plaintiff in support of its MAVERICKS Registration No. 4422214 on August 9, 2013, feature large waves breaking much like those seen at Mavericks Beach.

75.     Furthermore, the specimen filed by Defendant on June 18, 2001 in support of its MAVERICKS Registration No. 2532120 states in fine print that Mavericks Amber Ale, one of the beers produced by Defendant, is "[n]amed in honor of one of the Best Big Wave Surfing areas in the world."

76.     However, Defendant failed to disclose the fact its MAVERICKS trademarks are geographically descriptive of Mavericks Beach to the United States Patent and Trademark Office.

77.     Defendant extensively advertises Mavericks to create an association of it and its products with Mavericks Beach.

78.     Defendant is the owner of Registration Nos. 4141548, registered May 15, 2012 for "HALF MOON BAY BREWEING COMPANY SINCE 2000 plus Design for restaurant and bar services and has used its following designs since 2000:

 

79.     Defendant prominently displays its MAVERICKS wave logo on its products to emphasize its connection and association with the Mavericks locale.

80.

81.     Defendant advertises that is MAVERICKS marks were:

"Inspired by the world-famous Mavericks surf spot practically in its own backyard, Half Moon Bay Brewing Co. (hmbbrewingco.com) is an ocean view restaurant and brewery where Mavericks Bootlegger Brown Ale and a Sandy Beach Blonde Hefeweizen are piped directly from the brewery to the bar! Talk about 'Riding Giants', the brews don't get much colder, fresher or tastier than the spot where surfing legends are nourished with heart-warming food and hospitality.

The Maverick giant waves that can reach over 50 feet in height were documented in a movie that you may see on monitors at the restaurant."

82.     The primary significance of both of Defendant's trademark registrations is Mavericks Beach.

83.     Because of the packaging of Defendant's products, the location of Defendant's restaurant and brewery, and Defendant's representations, any reasonable consumer would believe Defendant's beer and wine originate from Mavericks Beach.

84.     Therefore, both of Defendant's trademark registrations are geographically descriptive.

85.     Section 2(e)(2) of the Trademark Act, 15 US.C. § 1052(e)(2), prohibits registration on the Principal Register of a mark that is primarily geographically descriptive or primarily geographically mis-descriptive of the goods or services named in the application.

86.     Mavericks Beach at Half Moon Bay, CA is the site of the annual big wave surfing competition called Mavericks. The big wave surf area is located at offshore of Mavericks Beach at Half Moon Bay. The competition is held when conditions occur between November and March each year.

87.     Several documentary films have been shot  telling the history of Mavericks.

88.     Defendant capitalizes on Mavericks every year and holds events at Mavericks to promote its MAVERICKS beer.

89.     The first surfing contest at Mavericks, now known as Mavericks Invitational, was held in 1999, and has been held annually when weather permits.

90.     The organizers of Mavericks International invite 24 international big wave surfers annually to compete in the event (currently November 1-March 31).

91.     On June 10, 2013, at its Worldwide Developers Conference, Apple announced that the latest version of its Mac operating system OS X (version 10.9) would be entitled Mavericks. Apple said their new operating software generations would be named after places in California that have inspired them.

92.    In December 2017, Titans of Maverick, renamed the Mavericks Challenge, became part of World Surf League's Big Wave Tour. *See* www.titansofmavericks.com.

93.    On May 25, 2011, Defendant represented to the USTPO that MAVERICKS was not primarily geographically descriptive.

94.    At the time that Defendant made the representations, Defendant knew the representations were false.

95.    Defendant fraudulently withheld from the USPTO and examining attorney assigned to its MAVERICKS Registration No. 2532120 the fact that Registration No. 2532120 is primarily geographically descriptive, and therefore ineligible for registration on the Principal Register.

96.    In addition, Defendant was not in compliance with all local, state and federal laws regarding alcoholic beverages at the time it filed its trademark application for beer and any use before compliance was not a lawful use.

97.    It is unlawful to sell or market alcoholic beverages not in compliance with all local, state and federal laws regarding alcoholic beverages.

98.    Defendant received its "47 – On-Sale General Eating Place" license from the California Department of Alcoholic Beverage Control on June 29, 2000, License No. 365124.

99.    Half Moon Bay Brewing Company LLC received its first "23 – Small Beer Manufacturer" license from the California Department of Alcoholic Beverage Control on October 31, 2002, License No 375098.

100.    License No. 375098 was transferred to Defendant The Brewery on Half Moon Bay Inc. on September 18, 2007 to License 365124.

101.    However, according to Registration No. 2532120, which was a Section 1(a) application filed based on actual use, Defendant was brewing and selling Mavericks beer at least

14

as early as June 18, 2001, more than a year before Defendant received its Small Beer Manufacturer license.

102. Indeed, Defendant's specimen filed in support of Registration No. 2532120 on June 18, 2001 describes Half Moon Bay Brewing Company, which brews and sells Defendant's Mavericks beer, as a "waterfront restaurant & brew pub."

103. Therefore, Defendant was brewing and selling Mavericks beer for more than a year without the necessary permits required by California law.

104. Thus, Defendant's Registration No. 2532120 for MAVERICKS for "beer and ale" is predicated upon illegal use and is therefore invalid.

105. Defendant received its first COLA registration TTB ID 03002000000266 for MAVERICKS for ale on January 9, 2003.

106. At the time that Defendant filed its trademark application for MAVERICKS for beer or ale, it was not licensed by the State of California or United States to manufacture or sale beer labeled as MAVERICKS.

107. Defendant received its first COLA registration TTB ID 14226001000460for MAVERICKS for wine on August 27, 2014.

108. At the time that Defendant filed its trademark application for MAVERICKS for beer or ale, it was not licensed to manufacture, or sell, or bottle beer or ale labeled as MAVERICKS.

109. At the time that Defendant filed its trademark application for MAVERICKS for wine, it was not licensed to manufacture, or sell, or bottle wine labeled as MAVERICKS.

## DECLARATORY JUDGMENT THAT THERE IS NO FEDERAL TRADEMARK INFRINGEMENT

110.    Plaintiff repeats and realleges all the factual allegations contained herein as though the same were set forth again at length herein.

111.    Plaintiff has not infringed and is not continuing to infringe Defendant's MAVERICKS marks.

112.    Plaintiff's MAVERICK marks and goods and services are materially different from Defendant's MAVERICKS trademarks and goods and services in that Plaintiff's MAVERICK marks each relate to whiskey or bourbon which clearly distinguishes Plaintiff's mark from those of Defendant and eliminates any possibility of consumer confusion.

113.    Plaintiff's use in commerce of its MAVERICK trademarks is not likely to cause consumers to believe that Defendant's and Plaintiff's goods and services come from the same origin or source, or that Defendant sponsor or approve the goods of Defendant, or that Plaintiff and Defendant are somehow affiliated, connected or associated with one another when in fact they are not.

114.    Plaintiff's acts have not damaged and will not continue to damage Defendant and Defendant has an adequate remedy at law.

115.    The actions of Plaintiff do not constitute trademark infringement with Defendant's MAVERICKS trademarks in violation of the federal Lanham Act, 15 U.S.C. § 1125(a).

116.    Pursuant to 15 U.S.C. §1117(a), Defendant is not entitled to damages for Plaintiff's alleged trademark infringement, any accounting of profits made by Defendant on sales of confusingly similar products bearing its MAVERICK trademarks, or recovery of Defendant's costs of this action.

117.    Plaintiff's acts make do not this an exceptional case entitling Defendant to an award of three times its actual damages pursuant to 15 U.S.C. § 1117(a) and recovery of its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

118.    Pursuant to 15 U.S.C. § 1116(a), Defendant is not entitled to preliminary and permanent injunctive relief to prevent Plaintiff's continuing use of the MAVERICK marks.

## DECLARATORY JUDGMENT THAT THERE IS NO FEDERAL TRADEMARK COUNTERFEITING

119.    Plaintiff repeats and realleges all the factual allegations contained herein as though the same were set forth again at length herein.

120.    Plaintiff has not used and is not continuing to use spurious designations that are identical to, or substantially indistinguishable from the Defendant's trademarks without the consent of Defendant.

121.    The foregoing acts of Plaintiff are not intended to cause, have not caused, and are not likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that Plaintiff's products or services are not genuine or authorized products or services of Defendant.

122.    Plaintiff has not acted with knowledge of Defendant's ownership of Defendant's trademarks and with deliberate or intentional or willful blindness to unfairly benefit from the goodwill of Defendant's trademarks.

123.    Plaintiff's acts do not constitute trademark counterfeiting in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114).

124.    Upon information and belief, Plaintiff has not made and will not continue to make substantial profits and gains to which they are not in law or equity entitled.

125.    Plaintiff's acts have not damaged and will not continue to damage Defendant and Defendant has an adequate remedy at law.

## DECLARATORY JUDGMENT THAT THERE IS NO FEDERAL FALSE DESIGNATION OF ORIGIN OR SOURCE

126.    Plaintiff repeats and realleges all the factual allegations contained herein as though the same were set forth again at length herein.

127.    Plaintiff has not used in commerce a reproduction, counterfeit, copy or colorable imitation of Defendant's trademarks without the consent of Defendant.

128.    Plaintiff has not used in commerce a reproduction, counterfeit, copy or colorable imitation of Defendant's trademarks without the consent of Defendant.

129.    Plaintiff has not used in commerce a reproduction, counterfeit, copy or colorable imitation of Defendant's trademarks without the consent of Defendant.

130.    Plaintiff has a valid and protected trademark in its MAVERICK trademarks which identifies the source of the goods and services of Plaintiff.

131.    Plaintiff has not used in commerce a reproduction, counterfeit, copy or colorable imitation of Defendant's trademarks without the consent of Defendant.

132.    Plaintiff's use in commerce of its MAVERICK trademarks and trade dress has been in connection with the sale, offering for sale, distribution, or advertising of Plaintiff's goods and services.

133.    Plaintiff's use in commerce of its MAVERICK trademarks and trade dress are not likely to cause confusion of consumers, or to cause mistake, or to deceive consumers desiring to purchase Defendant's goods and services regarding the source and quality of the services or association with Defendant.

134.    Plaintiff's use of its MAVERICK trademarks is not likely to cause confusion, or to cause mistake, or to deceive as to the origin or source of Plaintiff's goods and services.

135.    Plaintiff's use in commerce of its MAVERICK trademarks is not likely to cause consumers to believe that Defendant's and Plaintiff's goods and services come from the same origin or source, or that Defendant sponsor or approve the goods of Defendant, or that Plaintiff and Defendant are somehow affiliated, connected or associated with one another when in fact they are not.

136.    Plaintiff's use in commerce of its MAVERICK trademarks has not caused loss of goodwill and profits to Defendant, has not damaged the reputation of Defendant's genuine goods, and has not injured the public by causing confusion, mistake, and deception.

137.    Plaintiff has not used its MAVERICK trademarks in commerce with the knowledge and intent that such use cause confusion, mistake, and deception to the purchasing public.

138.    This is not an exceptional case entitling Defendant to an award of three times its actual damages and recovery of its reasonable attorneys' fees.

139.    Defendant is also not entitled to prejudgment interest on its recovery.

140.    The actions of Plaintiff do not constitute unfair competition with Defendant in violation of the federal Lanham Act, 15 U.S.C. § 1125(a).

141.    Pursuant to 15 U.S.C. §1117(a), Defendant is not entitled to damages for Plaintiff's alleged unfair competition, any accounting of profits made by Defendant on sales of confusingly similar products bearing its MAVERICK trademarks, or recovery of Defendant's costs of this action.

142.    Plaintiff's unfair competition with Defendant has not been willful and wanton for the purpose of deceiving consumers and injuring the goodwill of Defendant.

143.   Plaintiff's acts make do not this an exceptional case entitling Defendant to an award of three times its actual damages pursuant to 15 U.S.C. § 1117(a) and recovery of its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

144.   Plaintiff's acts are not irreparably injuring Defendant's goodwill and eroding Defendant's share of the market.

145.   Pursuant to 15 U.S.C. § 1116(a), Defendant is not entitled to preliminary and permanent injunctive relief to prevent Plaintiff's continued use of the MAVERICK marks.

### DECLARATORY JUDGMENT THAT THERE IS NO TEXAS TRADEMARK INFRINGEMENT

146.   Plaintiff repeats and realleges all the factual allegations contained herein as though the same were set forth again at length herein.

147.   Plaintiff's acts do not constitute trademark infringement under the trademark laws of the State of Texas.

148.   Plaintiff's acts do not entitle Defendant to recover any damages and costs of this action, together with any accounting of profits made by Plaintiff on sales of its services and goods.

149.   The acts of Plaintiff have not been malicious and calculated to injure Defendant.

150.   Defendant is not entitled to an award of its reasonable attorney's fees and exemplary damages against Plaintiff.

151.   Plaintiff's acts do not constitute inducing and contributing to Texas trademark infringement.

152.   Plaintiff's acts are not irreparably injuring Defendant's goodwill.

153.   Further, Defendant has an adequate legal remedy.

154.   Under the trademark laws of the State of Texas, Defendant is not entitled to preliminary and permanent injunctive relief.

## DECLARATORY JUDGMENT THAT THERE IS NO FEDERAL UNFAIR COMPETITION

155.   The factual allegations of the foregoing paragraphs are repeated and realleged as if fully set forth herein.

156.   The actions of Plaintiff do not constitute unfair competition with Defendant in violation of the federal Lanham Act, 15 U.S.C. § 1125(a).

157.   Pursuant to 15 U.S.C. §1117(a), Defendant is not entitled to damages, any accounting of profits made by Plaintiff on sales of Plaintiff's goods and services, and recovery of Defendant's costs of this action.

158.   Plaintiff's acts have not been intentional and for the purpose of deceiving consumers and injuring the goodwill of Defendant.

159.   Plaintiff has not misrepresented the nature, characteristics, qualities, or geographic origin of its or Defendant's goods, services, or commercial activities.

160.   Plaintiff's acts do not make this an exceptional case entitling Defendant to an award of three times its actual damages pursuant to 15 U.S.C. § 1117(a) and (b) and recovery of its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

161.   Plaintiff's acts are not irreparably injuring Defendant's goodwill and eroding Defendant's share of the market.

162.   Pursuant to 15 U.S.C. § 1116(a), Defendant is not entitled to preliminary and permanent injunctive relief to prevent Plaintiff's continuing acts.

163.   Defendant is also not entitled to prejudgment interest on their recovery.

## DECLARATORY JUDGMENT THAT THERE IS NO COMMON LAW UNFAIR COMPETITION

164.    Plaintiff repeats and realleges all the factual allegations contained herein as though the same were set forth again at length herein.

165.    Plaintiff's acts do not constitute unfair competition under the common law of the State of Texas.

166.    Plaintiff's acts do not entitle Defendant to recover any damages and costs of this action, together with any accounting of profits made by Plaintiff on sales of its goods and services.

167.    Plaintiff's acts of have not been malicious and calculated to injure Defendant.

168.    The Plaintiff's conduct does not entitle Defendant to an award of its reasonable attorney's fees and exemplary damages against Plaintiff.

169.    Plaintiff's acts constitute inducing and contributing to unfair competition.

170.    Plaintiff's acts are not irreparably injuring Defendant's goodwill, and unless enjoined by this Court, will continue to do so.

171.    Further, Defendant has an adequate legal remedy.

172.    Under the common law of the State of Texas, Defendant is not entitled to preliminary and permanent injunctive relief to prevent Plaintiff's continuing acts.

## DECLARATORY JUDGMENT THAT THERE IS NO COMMON LAW PALMING OFF

173.    Plaintiff repeats and realleges all the factual allegations contained herein as though the same were set forth again at length herein.

174.    Plaintiff has not palmed off Plaintiff's goods and services as originating from or sponsored by Defendant, in violation of the common laws of the State of Texas.

175.    Plaintiff's acts do not entitle Defendant to recover any damages and costs of this action, together with any accounting of profits made by Plaintiff.

176.    Plaintiff's has not palmed off its goods and services as originating or sponsored by Defendant and have not been malicious and calculated to injure Defendant.

177.    The nature of Plaintiff's conduct does not entitle Defendant to an award of its reasonable attorney's fees and exemplary damages against Plaintiff.

178.    Plaintiff's acts do not constitute inducing and contributing to palming off.

179.    Plaintiff's sales of Plaintiff's goods and services are not as originating or sponsored by Defendant and are not irreparably injuring Defendant's goodwill and eroding Defendant's share of the market.

180.    Further, Defendant has an adequate legal remedy.

181.    Under the common law of the State of Texas, Defendant is not entitled to preliminary and permanent injunctive relief.

## DECLARATORY JUDGMENT THAT THERE IS NO FEDERAL FALSE ADVERTISING

182.    Plaintiff repeats and realleges all the factual allegations contained herein as though the same were set forth again at length herein.

183.    Plaintiff has not made any statements that are literally false and deceive customers.

184.    Plaintiff's statements, whether express or implied, do not have a tendency to deceive consumers.

185.    Plaintiff's statements are not injuring the goodwill of Defendant.

186.    The actions of Plaintiff do not constitute a false or misleading representation of fact in commercial advertising or promotion concerning the nature, characteristics, or qualities of Defendant's company in violation of the federal Lanham Act, 15 U.S.C. §1125(a)(1)(B).

187.    Pursuant to 15 U.S.C. §1117(a), Defendant is not entitled to damages for Plaintiff's advertisements, any accounting of profits made by Plaintiff on sales of any goods and services, and recovery of Defendant's costs of this action.

188.    Plaintiff's statements have not been made willfully and wantonly for the purpose of deceiving consumers.

189.    Plaintiff's acts do not constitute inducing and contributing to the false advertising.

190.    The acts of Plaintiff do not make this an exceptional case entitling Defendant to an award of three times its actual damages pursuant to 15 U.S.C. § 1117(a) and recovery of its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

191.    Plaintiff's advertisements are not irreparably injuring Defendant's goodwill and eroding Defendant's share of the market.

192.    Pursuant to 15 U.S.C. § 1116(a), Defendant is not entitled to preliminary and permanent injunctive relief to prevent Plaintiff's continuing false advertisements.

## DECLARATORY JUDGMENT THAT THERE IS NO COMMON LAW FALSE ADVERTISING

193.    Plaintiff repeats and realleges all the factual allegations contained herein as though the same were set forth again at length herein.

194.    Plaintiff's acts do not constitute false advertising under the common law of the State of Texas.

195.    Plaintiff's advertising does not entitle Defendant to recover any damages and costs of this action, together with any accounting of profits made by Plaintiff on sales of its goods and services.

196.    The acts of Plaintiff have not been malicious and calculated to injure Defendant.

197.    The nature of Plaintiff's conduct does not entitle Defendant to an award of its reasonable attorney's fees and exemplary damages against Plaintiff.

198.    Plaintiff's acts do not constitute inducing and contributing to the false advertising.

199.    Plaintiff's advertisements are not irreparably injuring Defendant's goodwill and eroding Defendant's share of the market.

200.    Further, Defendant has an adequate legal remedy.

201.    Under the common law of the State of Texas, Defendant is not entitled to preliminary and permanent injunctive relief to prevent Plaintiff's continuing false advertisements.

## DECLARATORY JUDGMENT THAT THERE IS NO VIOLATION OF THE ANTI-CYBERSQUATTING PROTECTION ACT

202.    Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

203.    Defendant does not own and use a distinctive mark in connection with its goods and services.

204.    Defendant has not acquired secondary meaning in its name.

205.    Plaintiff is not using domain names that are confusingly similar or identical to any protected mark of the Defendant.

206.    Plaintiff's domain name was not registered in bad faith seeking to profit by intentionally diverting internet traffic from the Defendant to the websites of the Plaintiff.

207.    Plaintiff was not aware of the Defendant's mark and business name at the time it registered its domain names.

208.    Plaintiff's websites do not tarnish the goodwill established by the Defendant or misleading consumers as to source, affiliation, sponsorship or endorsement of Plaintiff's lawful websites.

209.    Plaintiff had a good faith legal basis for registration of the domain names.

25

210.    The acts of the Plaintiff are not in violation of 15 U.S.C § 1125(d)(1).

211.    Defendant is not entitled Under 15 U.S.C § 1125(d)(1)(C) of the Lanham Act to have Plaintiff's domain names transferred from the Plaintiff to the Defendant as well as other damages under 15 U.S.C § 1117(a) or 1117(d).

## DECLARATORY JUDGMENT THAT THERE IS
## NO TRADEMARK DILUTION

212.    Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

213.    Plaintiff has established a business reputation of its own, by extensively advertising and selling its business under the its mark.

214.    Defendant's business reputation has not created any distinctive quality in the its mark.

215.    Defendant's business name has not acquired secondary meaning.

216.    As a result of this lack of distinctiveness of its mark, despite any claimed use and advertising in connection with Defendant's goods or services, its mark has not become famous and does not identify a single source of goods or services.

217.    Therefore, Plaintiff's continued use of its mark cannot constitute action likely to injure Defendant's business reputation or dilute the quality of the Defendant mark.

218.    As a result of Plaintiff's actions, Defendant has not sustained and will not sustain any dilution of its goodwill and reputation which it claims were established in connection with the use and promotion of Defendant's mark, and which it claims caused the loss of sales and profits.

219.     Plaintiff's offering of goods or services under its service mark and trade name does not foreclose Defendant's market.

220.    The acts of Plaintiff do not constitute trademark dilution of Defendant's mark under the federal Lanham Act, 15 U.S.C. § 1125(c)(1).

221.    The acts of Plaintiff do not constitute trademark dilution of Defendant's mark under the Texas Trademark Act.

## DECLARATORY JUDGMENT THAT PLAINTIFF IS ENTITLED TO TRADEMARK REGISTRATIONS

222.    Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

223.    There is no likelihood of confusion between Plaintiff's mark and Defendant's mark.

224.    Plaintiff use of its mark is not likely to cause confusion, mistake, or deception as to the source, origin, affiliation, association, connection, or sponsorship of Plaintiff's goods and services offered under the MAVERICK marks with Defendant's MAVERICKS marks and/or with Defendant or Defendant's activities.

225.    Plaintiff is entitled to register its mark.

## DECLARATORY JUDGMENT THAT DEFENDANT'S REGISTRATIONS BE CANCELLED

226.    Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

227.    Defendant's above listed registrations should be canceled.

228.    Defendants above listed pending application should be denied.

229.    Under section 2(d) of the Lanham Act, 15 U.S.C. §1052(d), Defendant is not entitled to registration for its marks because Defendant's marks are primarily geographically descriptive or primarily geographically mis-descriptive.

230.    Plaintiff believes that it is or will be damaged by the Defendant's above listed registrations and approval of its above listed pending application, and hereby requests cancellation thereof.

231.    Plaintiff respectfully requests its declaratory judgment be granted and that its marks be registered.

232.    Plaintiff's registration for beer is invalid because it was fraudulently obtained and was not in lawful use at the time the trademark application was filed in 2001.

233.    Plaintiff's registration for wine is invalid because it was fraudulently obtained.

234.    Plaintiff's registrations for wine and application for whiskey are invalid for being primarily geographically descriptive.

235.    Plaintiff request that the Court order the cancellation of Defendant's above listed registrations and denial of its above listed pending application pursuant to the Court's powers under 15 U.S.C. § 1119.

## NOTICE OF LITIGATION HOLD REQUIREMENT

236.    Defendant is hereby notified that they are legally obligated to locate, preserve, and maintain all records, notes, drawings, documents, data, communications, materials, electronic recordings, audio/video/photographic recordings, and digital files, including edited and unedited or "raw" source material, and other information and tangible things that Defendant know, or reasonably should know, may be relevant to actual or potential claims, counterclaims, defenses, and/or damages by any party or potential party in this lawsuit, whether created or residing in hard copy form or in the form of electronically stored information (hereinafter collectively referred to as "Potential Evidence").

237.    As used above, the phrase "electronically stored information" includes without limitation: computer files (and file fragments), e-mail (both sent and received, whether internally or externally), information concerning e-mail (including but not limited to logs of e-mail history and usage, header information, and deleted but recoverable e-mails), text files (including drafts, revisions, and active or deleted word processing documents), instant messages, audio recordings and files, video footage and files, audio files, photographic footage and files, spreadsheets,

databases, calendars, telephone logs, contact manager information, internet usage files, and all other information created, received, or maintained on any and all electronic and/or digital forms, sources and media, including, without limitation, any and all hard disks, removable media, peripheral computer or electronic storage devices, laptop computers, mobile phones, personal data assistant devices, Blackberry devices, iPhones, Android-based smart phones, Windows-based smart phones, video cameras and still cameras, and any and all other locations where electronic data is stored. These sources may also include any personal electronic, digital, and storage devices of any and all of Defendant's agents or employees if Defendant's electronically stored information resides there.

238.    Defendant is hereby further notified and forewarned that any alteration, destruction, negligent loss, or unavailability, by act or omission, of any Potential Evidence may result in damages or a legal presumption by the Court and/or jury that the Potential Evidence is not favorable to Defendant's claims and/or defenses. To avoid such a result, Defendant's preservation duties include, but are not limited to, the requirement that Defendant immediately notify their agents and employees to halt and/or supervise the auto-delete functions of Defendant's electronic systems and refrain from deleting Potential Evidence, either manually or through a policy of periodic deletion.

## JURY DEMAND

239.    Plaintiff hereby demands a trial by jury.

## PRAYER

WHEREFORE, Plaintiff prays that:

A.    The Court enter a judgment that Plaintiff's use of its MAVERICK marks is not likely to cause confusion, mistake or deception.

B.    The Court enter a judgment declaring that Defendant's trademark rights have not been infringed;

C.    The Court enter a judgment declaring that Defendant has no exclusive rights in the use of MAVERICKS and MAVERICK as a trademark.

D.    The Court enter a judgment declaring that Plaintiff has done nothing wrong.

E.    The Court enter a judgment declaring that Plaintiff has not engaged in unfair competition.

F.    The Court enter a judgment declaring that Plaintiff has not diluted any trademark rights of Defendant.

G.    The Court enter a judgment declaring that Plaintiff has not engaged in palming off or violated any rights of Defendant.

H.    The Court enter a judgment declaring that there is no likelihood of confusion, mistake or deception between the MAVERICK marks of Plaintiff and MAVERICKS marks of Defendant.

I.    The Court enter a judgment declaring that Plaintiff's MAVERICK marks will not dilute Defendant's MAVERICKS marks because of Plaintiff's use its marks.

J.    The Court enter a judgment declaring that Defendant has no basis for any claim of damages or compensation from Plaintiff.

K.    The Court enter a judgment declaring that Plaintiff has not violated the Anti-Cybersquatting Protection Act as a result of Plaintiff's registration of www.maverickwhiskey.com and use of Plaintiff's website.

L.    The Court enter a judgment declaring that Plaintiff's conduct does not constitute false and/or misleading representations or is likely to cause confusion as to the source of origin or

30

source in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and is not a trademark infringement under the Lanham Act and the laws of the state of Texas or any other state and has not injured and will not injure Defendant or entitle Defendant to any relief and damages.

M.   The Court enter a judgment declaring that Defendant does not own the exclusive right to use and license the MAVERICKS trademark for use with alcoholic beverages and merchandise relating thereto.

N.   The Court enter a judgment declaring that Defendant does not own and/or have the exclusive right to use and license a family of MAVERICKS Marks for use with alcoholic beverages and merchandise relating thereto and promote the family of marks together.

O.   The Court enter a judgment declaring that Plaintiff's marks are not likely to cause confusion, mistake, or deception as to the source, origin, affiliation, association, connection, or sponsorship of Applicant's goods and services offered under Plaintiff's MAVERICK marks and with Plaintiff's activities.

P.   The Court enter a judgment declaring that Defendant's claimed MAVERICKS Marks are not inherently distinctive and have not acquired secondary meaning and are not exclusively associated with Defendant.

Q.   The Court enter a judgment declaring that Defendant's MAVERICKS Marks are not famous within the meaning of the Federal Trademark Dilution Act or any state dilution act.

R.   The Court enter a judgment declaring that Plaintiff did not file its trademark applications after the MAVERICKS Marks had become famous.

S.   The Court enter a judgment declaring that there is no likelihood of confusion, likelihood of dilution and damage to Defendant if Plaintiff is allowed to use and register its MAVERICK marks.

T.     The Court enter a judgment declaring that the maturation of the Plaintiff's applications into registrations would not cause a likelihood of confusion, mistake, or deception with Defendant and the MAVERICKS Marks, a likelihood of association, connection or affiliation with Defendant, the goods and services offered by Defendant under the MAVERICKS Marks or as to the origin, sponsorship or approval by Defendant of Applicant's goods or commercial activities, and a likelihood of dilution of the MAVERICKS Marks.

U.     The Court enter a judgment declaring that Defendant would be not damaged by the registration of the MAVERICK marks shown in the Plaintiff's applications.

V.     The Court enter a judgment declaring that MAVERICKS is primarily geographically descriptive or primarily geographically mis-descriptive.

W.     The Court enter a judgment declaring that MAVERICKS registrations were procured by claiming and representing that MAVERICKS was not primarily geographically descriptive or primarily geographically mis-descriptive to the USPTO.

X.     The Court enter a judgment declaring that MAVERICKS registrations were procured by concealing that MAVERICKS was primarily geographically descriptive or primarily geographically mis-descriptive to the USPTO.

Y.     The Court enter a judgment declaring that MAVERICKS registrations were procured by fraud on the USPTO.

Z.     The Court enter a judgment declaring that Defendant's Registration No. 2532120 was predicated on illegal and fraudulent use because Defendant had not obtained the necessary licenses required to brew beer or ale under California law when the application was filed, and that Registration No. 2532120 is therefore invalid.

AA.    The Court order the cancellation of U.S. Trademark Registration No. 2532120 pursuant to the Court's powers under 15 U.S.C. § 1119 because Registration No. 2532120 is predicated on illegal use and is therefore invalid.

BB.    The Court direct the USPTO to cancel U.S. Trademark Registration Nos. 2532120 and 4422214 and find that MAVERICKS is primarily geographically descriptive or primarily geographically mis-descriptive and has not acquired secondary meaning and were fraudulently obtained pursuant to the Court's powers under 15 U.S.C. § 1119;

CC.    The Court order the registration of Plaintiff's mark pursuant to the Court's powers under 15 U.S.C. § 1119.Plaintiff be awarded such other relief as the Court deems just and equitable.

DATED this 14th day of February, 2019.

Respectfully submitted,

Hanor Law Firm PC
By  /s/ Charles W. Hanor
Charles W. Hanor
750 Rittiman Road
San Antonio, Texas 78209
Telephone: (210) 829-2002
Fax: (210) 829-2001
chanor@hanor.com
Texas Bar No. 08928800

ATTORNEYS FOR PLAINTIFF