IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MAVERICK WHISKEY, LLC, | § § § | |
| *Plaintiff,* | § § | SA-19-CV-00136-JKP |
| vs. | § § | |
| BREWERY ON HALF MOON BAY, INC., | § § § | |
| *Defendant.* | § § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Jason K. Pulliam:**

This Report and Recommendation concerns Defendant's Motion to Dismiss Based on Defective Service and Lack of Personal Jurisdiction [#23]. All non-dispositive pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#48] and Defendant's Motion to Dismiss was specifically referred for a report and recommendation [#49]. The undersigned therefore has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Defendant's motion be **GRANTED**.

## I. Procedural and Factual Background

Plaintiff Maverick Whiskey, LLC filed this action against Defendant Brewery on Half Moon Bay, Inc. seeking a declaratory judgment regarding its right to use the trademark "Maverick" and an injunction directing the United States Patent and Trademark Office ("USPTO") to cancel Defendant's trademark registration. Plaintiff alleges that Maverick Whiskey, a company owned by Kenneth Maverick, is named after Kenneth Maverick's great, great, great-grandfather, Samuel Augustus Maverick, a Texas rancher who refused to brand his

1

cattle, made his own whiskey, and is responsible for the origin of the word "maverick" in the English lexicon. (Compl. [#1] at ¶¶ 28–44.) Kenneth Maverick started Maverick Whiskey in 2016 and filed a number of trademark applications, such as "Maverick Whiskey" and "Maverick Bourbon," in connection with his business. (*Id.* at ¶¶ 44–50.) The USPTO denied the applications and refused the registrations because Defendant, a business in Half Moon Bay, California, has owned a trademark registration for "Mavericks" for "beer and ale" and "wine" since 2002 and 2013, respectively. (*Id.* at ¶¶ 51–53.) Plaintiff alleges that Defendant's marks are named after Mavericks Beach, a surf destination next to Defendant's restaurant and brewery in Half Moon Bay, California—Half Moon Bay Brewing Company. (*Id.* at ¶¶ 77–82.)

Plaintiff believes Defendant's trademarks are invalid because Plaintiff was the first user of "Maverick" for whiskey and alleges it has been using the "Maverick" mark on its website, [www.maverickwhiskey,com](www.maverickwhiskey,com), since at least as early as May 2018 to advertise the sale of its products. (*Id.* at ¶¶ 61–63.) Plaintiff also contends that Defendant's marks, because they are named for a famous surfing beach adjacent to Defendant's property, are geographically descriptive and therefore prohibited from trademark registration under Section 2(e)(2) of the Trademark Act, 15 U.S.C. § 1052(e)(2) (prohibiting registration of a mark that is primarily geographically descriptive of the goods or services named in the application). (*Id.* at ¶¶ 76, 85, 93–94.)

Plaintiff alleges that Defendant has threatened to sue Plaintiff for trademark infringement and unfair competition. (*Id.* at ¶¶ 56–61.) By this lawsuit, Plaintiff asks the Court to issue a declaratory judgment that Plaintiff's actions do not constitute trademark infringement, counterfeiting, false designation of origin, unfair competition, false advertising, or trademark dilution in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a) or any other violation under

state or federal law; that Plaintiff is entitled to the trademark registrations he seeks; and that the USPTO must cancel Defendant's registered marks.

Plaintiff filed this lawsuit on February 14, 2019. After several attempts at service, service was purportedly returned as executed on May 17, 2019 [#15]. After obtaining an extension of time to respond or otherwise defend this suit, Defendant filed the motion currently before the Court, arguing for the dismissal of Plaintiff's Complaint for lack of effective service and lack of personal jurisdiction. The Honorable Fred Biery referred this case to the undersigned, and the Court granted various extensions to file responses and replies to the motion. The Court set the motion for a hearing; the parties moved for a continuance; and the Court ultimately held a hearing on September 20, 2019, at which both parties appeared through counsel. After the hearing, this case was reassigned to the docket of the Honorable Jason K. Pulliam and referred again to the undersigned.

After considering Defendant's motion, the responses, replies, and sur-replies thereto [#31, #40, #41, #42], the evidence submitted in support and in opposition to the motion, the arguments of counsel at the hearing, Plaintiff's post-hearing brief on personal jurisdiction [#46], Defendant's objections to Plaintiff's sur-reply and post-hearing brief [#43, #47], and the governing law the undersigned recommends that Defendant's motion to dismiss be granted and this case be dismissed for lack of personal jurisdiction.

Defendant moves for dismissal on two grounds: improper service and lack of personal jurisdiction. Although service was indeed defective, the undersigned finds it would be futile to reorder service to comply with the Federal Rules of Civil Procedure because Plaintiff has failed to establish a prima facie case of personal jurisdiction over Defendant. Accordingly, this case should be dismissed.

## II. Improper Service

Defendant contends that service was not sufficient or proper in this case because neither of the two summonses at issue was "directed to the defendant" as required by Rule 4(a)(1)(B). The record reflects that one of the summonses was directed to Christine Mendonca; the other was directed to Leonard Mendonca. (Summons [#14] at 1, 3.) Although both of these individuals are affiliated with Defendant, the address listed on the summonses is the personal address of the Mendoncas and not the address of Defendant, and the summonses do not indicate that either Christine Mendonca or Leonard Mendonca were served as representatives of Defendant. (*See id.*) The summonses are directed at the Mendoncas as individuals. (*See id.*) Defendant asks the Court to conclude that process was insufficient under the Federal Rules of Civil Procedure and that the time for proper service has expired under Rule 4(m). *See* Fed. R. Civ. P. 4(m) (requiring service within 90 days of filing complaint).

Rule 12(b)(4) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss an action for defects in the form of the process. Such a motion "is proper only to challenge noncompliance with the provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1353 (3d ed.). Rule 4(b) provides:

> On or after filing the complaint, the plaintiff may present a summons to the clerk for signature and seal. If the summons is properly completed, the clerk must sign, seal and issue it to the plaintiff for service on the defendant. A summons—or a copy of a summons that is addressed to multiple defendants—must be issued for each defendant to be served.

Fed. R. Civ. P. 4(b). Pursuant to Rule 4(a)(1), a summons must: (A) name the court and the parties and (B) be directed to the defendant, among other requirements. *Id.* at 4(a)(1). "Thus,

4

process may be insufficient if the summons and complaint refer to a party in the wrong name." *Bowman v. Sanofi-Aventis U.S.*, No. A-09-CA-192-SS, 2009 WL 5083431, at *1 (W.D. Tex. Apr. 16, 2009). Plaintiff, as the serving party, bears the burden of proving the validity of service or good cause for failure to effect timely service. *See Sys. Signs Supplies v. U.S. Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990); *Familia De Boom v. Arosa Mercantil, S.A.*, 629 F.2d 1134, 1139 (5th Cir. 1980).

Plaintiff's response to Defendant's motion to dismiss does not dispute that the summonses at issue were directed at the Mendoncas individually and not to Defendant. Yet Plaintiff maintains that directing the summonses to the Mendoncas, who are the founders of Defendant and current board members (as well as Christine Mendonca being Defendant's registered agent for service), was the only way to notice Defendant of this lawsuit, as Plaintiff's initial three attempts to serve summonses directed to "The Brewery on Half Moon Bay, Inc." and various corporate officers on behalf of Defendant at the address listed with the Secretary of State for California were unsuccessful. (*See* Summons [#4] at 1 (directing service at The Brewery on Half Moon Bay, Inc. at 390 Capistrano Road); Summons [#7] at 1 (directing service at Craig Carroll for the Brewery on Half Moon Bay, Inc. at 390 Capistrano Road); Summons [#8] at 1 (directing service at Ken Pearlman for The Brewery on Half Moon Bay, Inc. at 390 Capistrano Road).) The Texas Secretary of State returned these three summonses as unexecuted for the stated reason: "Return to Send, Attempted—Not Known, Unable to Forward." (Ltr. [#9] at 1.) Plaintiff accuses Defendant of intentionally dodging service by illegally redirecting their mail to a U.S. Post Office Box, where the summonses were never claimed, in violation of California law. (Resp. [#31] at 2–3.)

Regardless of whether Defendant could legally designate a P.O. Box as its mailing address under California law, Plaintiff concedes that it did not direct the summonses that were ultimately served on the Mendoncas to Defendant as required by Rule 4(a)(1)(B). When process is insufficient, the Court has broad discretion to dismiss an action. *Coleman v. Bank of N.Y. Mellon*, 969 F. Supp. 2d 736, 744 (N.D. Tex. 2013). Nonetheless, defects in the summons should generally not be a basis for dismissal unless the defects caused actual prejudice to the defendant. *Id.* Plaintiff argues there has been no prejudice to Defendant, as Defendant received actual notice of this lawsuit upon service to the Mendoncas, despite any defect in the summonses. Plaintiff therefore asks the Court to extend the time for service and order amended service under Rules 4(a)(2) and 4(m). Were it not for the issue of personal jurisdiction, discussed *infra*, the undersigned would be inclined to order replacement service as requested. However, because there is no personal jurisdiction over Defendant in this Court, reordering service would be futile and therefore is not recommended.

### III.  Personal Jurisdiction

Defendant also moves for dismissal of Plaintiff's Complaint based on a lack of personal jurisdiction over Defendant.  The Court should grant the motion.

**A.     Legal Standard**

Rule 12(b)(2) of the Federal Rules of Civil Procedure provides the mechanism for challenging personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Where a non-resident defendant challenges personal jurisdiction, as here, the plaintiff bears the burden of making a *prima facie* showing of jurisdiction; the plaintiff need not establish jurisdiction by a preponderance of the evidence. *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). Once the plaintiff makes a *prima facie* case of personal jurisdiction, the burden shifts to the defendant to

demonstrate that exercising jurisdiction over the defendant would be so unfair and unreasonable as to violate due process. *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990).

A two-step analysis governs the inquiry into personal jurisdiction over nonresident defendants: (1) whether the long-arm statute of the forum state permits exercise of jurisdiction; and (2) whether such exercise comports with due process. *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). The Texas Supreme Court has interpreted the Texas long-arm provisions as conferring personal jurisdiction over nonresidents whenever consistent with constitutional due process. *Id.*; *see also Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991). Accordingly, this Court only need consider the latter inquiry. *Ham*, 4 F.3d at 415.

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). The Due Process Clause permits a federal court to exercise personal jurisdiction "when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant dos not offend 'traditional notions of fair play and substantial justice.'" *Latshaw v. H.E. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In determining whether the exercise of personal jurisdiction is "unfair and unreasonable" once minimum contacts are established, a court should consider: "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies."

*Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 630 (5th Cir. 1999). This is not a balancing test; Defendant must present a "compelling case" of unreasonableness. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

There are two types of personal jurisdiction—general and specific. General jurisdiction permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit. *Walden*, 571 U.S. at 283 n.6. Where the defendant's contacts are not sufficient to establish general jurisdiction (so pervasive such that defendant is basically at home in the forum state), a court may still exercise specific jurisdiction if (1) the defendant purposely directed its activities toward the forum state or purposely availed themselves of the privileges of conducting activities there; and (2) the controversy arises out of or is related to defendant's contacts. *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 369 (5th Cir. 2010). The touchstone of either inquiry is whether the "defendant *himself*" has purposefully availed himself of the benefits of the forum; "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him," and that connection must be "substantial." *Walden*, 571 U.S. at 284–85. When a defendant "'purposefully avails itself of the privilege of conducting activities within the forum State," it has clear notice that it is subject to suit there . . . .'" *World-Wide Volkswagen*, 444 U.S. at 297.

In determining whether personal jurisdiction exists, "the allegations of the complaint are taken as true to the extent they are not contradicted by affidavits." *Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982). "The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997) (quotation omitted). The "court must resolve all undisputed facts submitted by the plaintiff, as

well as all facts contested in the affidavits, in favor of jurisdiction." *Luv N' Care*, 438 F.3d at 469 (citing *Wyatt*, 686 F.2d at 280). "[E]ven if the court receives discovery materials, unless there is a full and fair hearing, it should not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008).

**B.     Analysis**

Plaintiff has failed to establish a *prima facie* case of personal jurisdiction over Defendant. Although Plaintiff's Complaint does not indicate whether it alleges general or specific jurisdiction over Defendant, Plaintiff clarified at the Court's hearing that it is only seeking to establish specific jurisdiction. Plaintiff contends that this declaratory judgment action arises out of Defendant's contacts with the forum state.

Plaintiff's Complaint generally alleges that the standards governing this Court's personal-jurisdiction inquiry have been satisfied in this case. (Compl. [#1] at ¶¶ 10, 11.) But these conclusory allegations are insufficient to support the exercise of personal jurisdiction without specific facts demonstrating that Defendant purposefully directed activities at the forum state. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) ("[T]he prima-facie-case requirement does not require the court to credit conclusory allegations, even if uncontroverted."). The only specific facts alleged by Plaintiff in its Complaint regarding personal jurisdiction are the following:

- Defendant conducts commerce and does business in the State of Texas (*id.* at ¶¶ 8, 14, 17);

- Defendant sells and markets its Mavericks beer and branded products nationwide and in the State of Texas (*id.* at ¶¶ 9, 17, 19–20);

- Defendant has a nationwide distribution program with Southern Wine & Spirits, now known as Southern Glazers, which has offices in Texas (*id.* at ¶¶ 21–24);

9

- Defendant actively solicits business from Texas residents to eat and drink at its brewery and restaurant (*id.* at ¶ 25);

- Defendant maintains interactive websites soliciting business from Texas residents (*id.* at ¶ 26);

- Defendant maintains a general presence in the State of Texas (*id.* at ¶ 17);

- Defendant caused injury to Plaintiff in the State of Texas (*id.* at ¶¶ 12, 18);

- Defendant expected its actions to be of consequence in the State of Texas and in this District" (*id.* at ¶ 13).

As previously stated, these factual allegations are only taken as true "to the extent they are not contradicted by affidavits." *Wyatt*, 686 F.2d at 282–83 n.13.

Defendant has submitted the sworn declaration of Craig Carroll, the Chief Executive Officer for Defendant, the contents of which directly contradict almost all of Plaintiff's jurisdictional allegations. (Carroll Decl. [#25].) Carroll asserts that it is a California corporation with its principal place of business in California; none of its shareholders are residents of Texas; it operates a bar/restaurant and brewery exclusively in California; it does not have a business presence, office, or employees in Texas; it does not participate in Texas trade shows or beer or wine tastings in Texas; it does not advertise or market its products in Texas; it does not have a distributor or nationwide distribution program that includes distribution in the State of Texas; it does not sell its products in stores or restaurants in Texas; and it does not offer its products for sale to Texas residents through its website. (*Id.* at ¶¶ 1–7.) Plaintiff does not concede the truth of these facts but has not presented any evidence effectively refuting them either.

Plaintiff's evidence attached to its response to Defendant's motion primarily consists of partial print-outs of various online articles and websites demonstrating nothing more than that Defendant's brewery and restaurant cater to both Californians and California tourists generally

[#31-7, #31-8]; Texas residents have visited both Mavericks Beach and Defendant's restaurant and brewery and written online reviews of their experiences [#31-14, #31-22, #31-41, #31-42]; Mavericks Beach offers "premier big-surfing waves"; [#31-10]; there is "a strong contingent of surfers in Texas" [#31-11]; Defendant's restaurant serves "Texas style spicy cole slaw" [#31-12]; and Texas is one of the most populated states in the country [#31-28, #31-29]. Defendant objects to much of this evidence as unauthenticated and incomplete and argues for its inadmissibility. (Objections [#40-3].) Regardless of whether this evidence is properly before the Court, none of this evidence establishes the requisite minimum contacts with the forum state by Defendant, only that some Texas residents have patronized Defendant's business and it is plausible that Texas surfers will visit Mavericks Beach and possibly visit Defendant's business in the future. These contacts do not reflect any purposeful conduct by Defendant directed at the forum. *See Walden*, 571 U.S. at 284–85. Serving California tourists, which include tourists from Texas, is not on its own purposeful availment of the benefits of Texas specifically.

Nor does Plaintiff direct the Court to any evidence that Defendant's officers or employees have traveled to Texas in conjunction with Defendant's brewery and restaurant. The only arguments Plaintiff makes about Defendant physically visiting Texas are that Leonard Mendonca, one of Defendant's founders, visited Austin, Texas on March 13, 2019 to present a lecture at the 2019 SXSW Conference and that Defendant is "likely to attend" a 2020 craft brewery event in San Antonio, Texas. But the description of Mr. Mendonca's talk on the SXSW schedule proffered by Plaintiff does not support Plaintiff's position that Mr. Mendonca visited Texas to market Defendant's Maverick beer or brewery generally, such that this case arose out of this contact with the forum, as is required for specific jurisdiction. (SXSW Schedule [#31-31, #31-32].) The schedule, in addition to citing Mr. Mendonca's ownership in Half Moon Brewing

11

Company, identifies him as the Chief Economic and Business Advisor to Governor Gavin Newsom of California, a Senior Partner of McKinsey & Company, and a Lecturer on Inequality at the Stanford Business School. (*Id.*) The title of Mr. Mendonca's lecture was "Food of the Dystopia: Beyond Bugs and Beans" and covered the future of food through science and innovation. (*Id.*) This contact does not give rise to specific personal jurisdiction over Defendant.

As evidence of Defendant's possible 2020 visit to San Antonio, Plaintiff merely proffers a printout of a page from Defendant's website containing the logo for the Brewers Association, a national organization promoting American craft brewers, and a printout of a page from the Brewers Association website reporting that the 2020 Craft Brewers Conference will take place in San Antonio, Texas. (Websites [#31-47, #31-48].) Plaintiff argues that this evidence establishes that Defendant is a member of the Brewers Association and will likely be traveling to San Antonio for the annual event. Such speculation is also irrelevant to the question of whether this lawsuit arises out of *existing* contacts Defendant has with the forum state.

The only arguments raised by Plaintiff that could plausibly give rise to the exercise of personal jurisdiction over Defendant are Plaintiff's assertions that Defendant nationally distributes its beer through a distributor with offices in Texas and Defendant solicits patrons to visit its brewery and restaurant through an interactive website. Yet neither argument ultimately carries the day. As for the first argument, Plaintiff has not presented any evidence demonstrating that Defendant actually distributes or sells its beer in Texas, only that it has chosen to partner with a distributor that has offices in Texas for distribution of its "award-winning brews across the United States." (*See* "Brewbound" Article [#31-44]; "Southern Glazer's Wine and Spirits of Texas" [#31-45].) Defendant concedes that Southern Glazers has contacts with Texas, as well as offices in 43 other states, Canada, and the Virgin Islands. (Reply [#40] at 11.) The undisputed

fact that Southern Glazers is a national distributor merely establishes that Defendant has a relationship with a third-party that conducts business in Texas, not that Defendant does. "To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with . . . other parties. *Walden*, 571 U.S. at 286. "But a defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction." *Id.* Again, the declaration of Defendant's CEO before the Court attests to the fact that Defendant does not distribute or sell its beer products in Texas. (*See* Carroll Decl. [#25] at ¶¶ 1–7.) This declaration, sworn under penalty of perjury, is uncontroverted. Accordingly, Defendant's relationship with Southern Glazers, which conducts business in Texas, without more, cannot establish that Plaintiff has the minimum contacts with Texas necessary to subject it to personal jurisdiction there.

In support of Plaintiff's argument regarding Defendant's interactive websites, Plaintiff provides the Court with printouts from Defendant's primary website, www.hmbbrewingco.com, which contains links to make reservations at Half Moon Bay Brewing Company and to book special events at the brewery, as well as links to the websites of neighboring Mavericks Event Center and the Inn at Mavericks, both of which also allow for bookings directly through the website and through third party sites such as OpenTable and TripAdvisor. (Website [#31-34, #31-35, #31-36, #31-37, #31-8, #31-9, #31-40, #31-41, #31-42].) An article from an online publication contained in Plaintiff's evidence describes the Mavericks Event Center as available for weddings, retreats, and corporate events. (Article [#31-16].)

The parties dispute whether the Mavericks Event Center and the Inn at Mavericks are separate legal entities unrelated to the personal jurisdiction inquiry over Defendant or whether the interactive booking websites for these two businesses are relevant to Defendant's contacts

with the forum for purposes of this lawsuit. (*See* Carroll Decl. [#40-2] ("The Inn at Mavericks is a legal entity separate and apart from defendant."); Post-Hearing Brief [#46] at 6 ("All of the Mavericks business are 'operated' by The Brewery on Half Moon Bay, Inc.").) Much of the parties' briefing focuses on this issue, including Plaintiff's Post-Hearing Brief on Personal Jurisdiction [#46]. Defendant objects to the Court's consideration of this filing on the basis that it was neither authorized at the Court's hearing nor filed after obtaining leave of court. (Objections [#47].) The Court need not address this objection because as detailed *herein* even if the Court were to consider all of the websites addressed in Plaintiff's briefing—the websites of Half Moon Bay Brewing Company, Mavericks Beer, Mavericks Event Center, and the Inn at Mavericks—it would still conclude that Plaintiff has not established specific personal jurisdiction over Defendant.

In evaluating whether a website can support the minimum contacts necessary to confer personal jurisdiction over a given defendant, this Circuit relies on the approach set forth in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997).[1] *Mink v. AAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999). "The *Zippo* decision categorized Internet use into a spectrum of three areas," employing a sliding scale from a passive website that merely

---

[1] The Court declines to embrace a modified or different framework for evaluating online contacts, as advocated by Plaintiff (Resp. [#31] at 9–10), due to changes in the use of the internet since 1997 when *Zippo* was decided. *See, e.g.*, *Sioux Transp., Inc. v. XPO Logistics, Inc.*, 5:15-CV-05265, 2015 WL 9412930, at *6–7 (W.D. Ark. Dec. 22, 2015). The undersigned also does not find the expert report by Peter Beshay on internet advertising, submitted by Plaintiff, to be of assistance in its analysis. (Beshay Rep. [#31-30].) The report merely emphasizes the importance of online marketing in the digital age and emphasizes the interactive nature of Defendant's websites, facts that are both self-evident and that are established equally by examining the printouts from pages of the websites themselves. Accordingly, the undersigned need not address Defendant's objections to the admissibility of Beshay's Report on the basis that it is unsworn, unauthenticated, and therefore inadmissible. (Objections [#40-3].) The undersigned has not relied on Beshay's Report in issuing this recommendation because it did not find any probative evidence contained therein that would affect the undersigned's analysis or conclusion.

advertises on the Internet to "situations where a defendant clearly does business over the Internet by entering into contracts with residents of other states." *Id.* (citing *Zippo*, 952 F. Supp. at 1124). In the former, personal jurisdiction is proper; in the latter it is not. *Id.* "In the middle of the spectrum, there are situations where a defendant has a website that allows a user to exchange information with a host computer." *Id.* In such situations, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website." *Zippo*, 952 F. Supp. at 1124.

Most of the websites at issue in this case fall in the middle category, in which they allow direct booking and links to third-party bookings for restaurant, inn, and event reservations. Although Plaintiff provides the Court with evidence that Defendant sells limited merchandise such as gift cards and clothing through its websites, Mr. Carroll's declaration states that Defendant does not sell its beer or wine, the only products that use Defendant's registered "Mavericks" trademarks, in an online forum. (Carroll Decl. [#40-2] at ¶¶ 4, 5.) This assertion remains uncontroverted by Plaintiff's evidence. There is therefore no basis for asserting specific jurisdiction over Defendant based on an argument that the infringing products are actively sold in the forum state through one of Defendant's websites. In fact, Plaintiff's evidence demonstrates that the only webpages containing images of Mavericks Beer are purely passive websites that contain advertising materials; the page provided in Plaintiff's evidence, for example, directs visitors to "Look for a new batch of Mavericks Beers in 2018." [2] (*See* Mavericks Beer Website [#31-46].)

---

[2] The undersigned is not persuaded by Plaintiff's argument that the use of the word "Mavericks" in reference to the Inn at Mavericks and the Mavericks Event Center makes this case not just about Mavericks beer and wine trademarks. (Sur-Reply [#41] at 10.) Plaintiff cannot credibly imply that these establishments are named after the trademarked alcoholic beverages, when Mavericks Beach is adjacent to all of these properties.

"Generally, advertisements are insufficient to establish personal jurisdiction," and the Fifth Circuit has held that website and print advertisement, even that containing an allegedly infringing mark, is insufficient to create specific personal jurisdiction over the out-of-state defendant behind the advertising. *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 345 (5th Cir. 2002). Following this guidance, several district court in this Circuit has concluded that "even if [a defendant] had posted the allegedly infringing mark on their websites . . ., this would be insufficient to show specific personal jurisdiction." *Glazier Grp., Inc. v. Mandalay Corp.*, No. CIV.A. H-06-2752, 2007 WL 2021762, at *9 (S.D. Tex. July 11, 2007). The Court should find the same here—Plaintiff's evidence that Defendant's websites contain images of and reference Mavericks Beer is insufficient to confer specific personal jurisdiction over Defendant.

Although Plaintiff is not arguing for general jurisdiction here, it is worth noting that a "website that is accessible nationwide (rather than targeted to the forum state) and that allows a patron to make reservations for or to obtain information about services that are not provided or paid for until the patron travels to a location outside the forum state, does not support general personal jurisdiction in the forum state." *Id.* at *9 (collecting cases). To hold otherwise, "would mean that virtually any corporation with a website would be subject to general jurisdiction in every state." *Id.* (citing *Snyder v. Dolphin Encounters Ltd.*, 235 F. Supp. 2d 433, 441 (E.D. Pa. 2002)). Under this reasoning, the fact that the Brewery at Half Moon Bay, the Inn at Mavericks, and Mavericks Event Center provide the ability for users to interact by making reservations for dining, lodging, and future events is not a basis for the exertion of general jurisdiction over Defendant. *See BGDG Enterprises, LLC v. Barley & Swine*, No. A-13-CA-719-SS, 2014 WL 12479650, at *5 (W.D. Tex. Jan. 23, 2014) (website, which allowed for reservations at defendant's restaurant, did not give rise to personal jurisdiction in Texas). Plaintiff's argument

that "Defendant uses the internet to the max," employing three "interlinked, interactive websites," as well as Twitter, Pinterest, and Instagram to market its businesses (Sur-Reply [#41] at 5),[3] does not supplant the fundamental requirement that Defendant demonstrate some purposeful contacts aimed at the forum state.

Finally, the Court should not credit Plaintiff's argument that Defendant's allegedly willful trademark infringement itself caused injury in Texas and therefore is sufficient to create specific personal jurisdiction. *BGDG Enterprises*, 2014 WL 12479650, at *6 ("reject[ing] any argument there is personal jurisdiction based solely on the allegation Defendants willfully infringed BDGD's trademark, therefore targeting and injuring BDGD in Texas"); *Fogo de Chao Churrascaria v. Fogo E. Brasa, L.L.C.*, No. CIV-A 3:03–CV–1351–B, 2004 WL 2607984, at *4 (N.D. Tex. Nov. 17, 2004) ("the mere effect of a defendant's allegedly tortious activity 'is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state'" (quoting *Panda Brandywine Corp.*, 253 F.3d at 868–69)).

Nor does the fact that Defendant sent Plaintiff a cease and desist letter establish specific personal jurisdiction over Defendant. (*See* Cease and Desist Ltr. [#31-23].) Plaintiff's declaratory judgment does not "arise out of" the cease and desist letter but rather the validity of the parties' respective claims to trademarks. *See Ham*, 4 F.3d at 416. "The mere act of asserting a trademark or copyright right through a cease and desist letter does not subject that party to specific personal jurisdiction." *Expedite It AOG, LLC v. ClaySmith Eng'g, Inc.*, No. 3:09–CV–1978–L, 2010 WL 2671314, at *4 (N.D. Tex. June 30, 2010). *See also Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006) (sending of a cease and

---

[3] Defendant objects to the Court's consideration of Plaintiff's sur-reply because it was not filed after obtaining leave of court. (Objection [#43].) Again, the arguments contained in the sur-reply and the evidence attached thereto do not alter the conclusion of the undersigned that there is no personal jurisdiction over Defendant.

desist letter, without more, is insufficient to confer personal jurisdiction over a non-resident defendant). However, where "a patentee casts its net of cease-and-desist letters too widely and entangles some non-infringing products, a plaintiff may have little recourse other than a declaratory judgment action to disentangle its non-infringing business." *Red Wing Shoe Co. Inc. v. Hockerson–Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998). "In those instances, the cease-and-desist letters are the cause of the entanglement and at least partially give rise to the plaintiff's action." *Id.* at 1360. Such is not the case here.

In summary, Plaintiff has failed to establish a *prima facie* case of personal jurisdiction over Defendant and ordering jurisdictional discovery, as requested by Plaintiff, would not alter the Court's analysis. Plaintiff's proposed requests for production [#46-14] seek information related to whether Texans have patronized Defendant's brewery and restaurant, the Inn at Mavericks, and the Mavericks Event Center; the relationship between Defendant and these other entities; social media advertising by Defendant; and information on third party websites such as TripAdvisor. This information, even if favorable to Plaintiff, would not establish purposeful contacts with Texas under the governing law on specific personal jurisdiction. Additionally, Plaintiff's request for all sales of Mavericks beer since 2016 is not only overbroad but also futile in light of the declaration on record, sworn under penalty of perjury, that Defendant does not sell or distribute its Mavericks beer in Texas. (*See* Carroll Decl. [#25] at ¶¶ 1–7.)

## IV. Conclusion and Recommendation

Having considered Defendant's motion, the responses and replies thereto, the arguments of counsel at the Court's hearing on the motion, the evidence before the Court, and the governing legal standards, the undersigned recommends that Defendant's Motion to Dismiss Based on

Defective Service and Lack of Personal Jurisdiction [#23] be **GRANTED** and this case dismissed for lack of personal jurisdiction over Defendant.

### V. Instructions for Service and Notice of Right to Object/Appeal.

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal

conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 12th day of November, 2019.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE